**IN THE UNITED STATE DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
(Alexandria Division)

| | |
|---|---|
| **ANJUM ROKADIA** )<br>**c/o Daniel A. Harvill, Esq.** )<br>**9403 Grant Avenue, Suite 202** )<br>**Manassas, VA 20110** )<br> )<br>     **Plaintiff,** )<br> )<br>**v.** )<br> )<br>**UZMA KALEEM** )<br>**Serve at:    8379 Millwood Drive** )<br>              **Springfield, VA 22152** )<br> )<br>**SALMA K. CHADHA** )<br>**Serve at:    8634 Hillside Manor Drive** )<br>              **Springfield, VA 22152** )<br> )<br>     **Defendant.** )<br> ) | **Case No.**_____ |

**COMPLAINT**

**COME NOW**, Plaintiff Anjum Rokadia, and hereby complains of and seeks judgment

against Defendants, Uzma Kaleem and Salma K. Chadha (hereinafter collectively, "Defendants"),

as follows:

**The Parties**

1.      Plaintiff is an adult individual and resident of the State of Maryland.

2.      Defendant Uzma Kaleem (hereinafter, "Kaleem") is an adult individual and

resident of the Commonwealth of Virginia.

3.      Defendant Salma K. Chadha (hereinafter, "Chadha") is an adult individual and

resident of the Commonwealth of Virginia.

1

4.      Plaintiff is the former spouse of Kaleem. Kaleem and Plaintiff had a contentious and prolonged divorce in the Fairfax County Circuit Court that came to trial during 2024, and from which a Custody and Visitation Order, as well as a divorce decree were issued.

5.      As a result of that litigation, Plaintiff received a visitation schedule with his children.

6.      Defendant Chadha is the sister of Kaleem. When Plaintiff and Kaleem were married, they lived in a residence owned by Chadha in Springfield, VA. She was their landlord.

7.      Chadha, Kaleem and Plaintiff had a written lease for the rental of said residence by Kaleem and Plaintiff from Chadha.

8.      During and after the divorce of Plaintiff and Kaleem, Chadha and Kaleem often spoke about the situation of Kaleem and Plaintiff.

9.      Upon information and belief, Kaleem was disaffected by the result of the custody and visitation schedule received by the Plaintiff and motivated by a desire to retaliate against Plaintiff by getting him in trouble with law enforcement.

10.     Chadha supported her sister, Kaleem, in this disaffection and retaliation, and supported Kaleem's actions thereafter.

11.     Before and after the custody and visitation schedule was established, Kaleem engaged in a campaign of defamation and false accusations against Plaintiff, both to various private individuals as well as to local police.

12.     Chadha likewise engaged in a campaign alongside her sister to bolster and amplify the various false accusations of wrongdoing by Plaintiff both to private individuals and to the police.

2

13. As a result of these false accusations, Plaintiff was placed under a protective order and was also charged with significant crimes.

14. At issue in this action are certain false statements and accusations made by Kaleem and Chadha as follows:

a. On January 11, 2025, Kaleem stated to Farida Rokadia, Plaintiff's family member, that Plaintiff "broke into my home while I was out of town and took items from the house." This is an accusation of a crime of moral turpitude.

b. On January 10,2025 Kaleem made the same statement to a police officer.

c. On the January 11, 2025, Kaleem stated to Farida Rokadia that Plaintiff had made an "attempt to communicate" with her in a manner that would violate said protective order. This is an accusation of a crime.

d. On January 11, 2025, Kaleem made the same statement to a 911 operator and to Plaintiff's daughter.

e. On January 10, 2025, Kaleem made the same statement to a police officer.

f. On January 10, 2025, Chadha supported her sister during the interview with police, confirming Kaleem's false accusation by saying, "I don't know why he's doing stuff like this. He's crazy."

g. On January 10, 2025, Chadha also stated to Plaintiff's daughter that Plaintiff was mentally ill, calling him "crazy."

15. The statements made by Kaleem to police on January 10, 2025 were false when made.

16. Indeed, the protective order that Kaleem accused Plaintiff of violating had already expired.

3

17.    Kaleem knew the statements to police were false when she made them.

18.    The statements by Chadha confirming Kaleem's false accusations to police on January 10, 2025 were false when made.

19.    Chadha knew the statements were false when she made them.

20.    The statements made by Kaleem to Farida Rokadia, Plaintiff's daughter and the 911 Operator on January 11, 2025 were false when made.

21.    Kaleem knew that said statements were false when she made them.

22.    Kaleem and Chadha conspired with one another to make false statements to police for the following reasons, upon information and belief:

a.    Disaffected by the custody and visitation order, and motivated by a desire to retaliate against Plaintiff for ending the parties' marriage, Kaleem and Chadha sought to obtain the arrest and detention of Plaintiff, and to place pending charges against him.

b.    They intended for Kaleem to use the arrest and charges against Plaintiff as a basis to change custody and visitation of the children. They further intended to use the arrest and detention of Plaintiff as a basis to withhold the children from Plaintiff.

c.    Indeed, shortly after January 11, 2025, Kaleem successfully sought an emergency modification of custody and visitation on a temporary basis in the Fairfax County Circuit Court. She is also presently pursuing a permanent modification in that court. The basis of her claim for a change in custody was the arrest and detention and pending charges against Plaintiff based on her false accusations.

d.    In addition, Kaleem also used said false accusations to obtain a new two-year protective order against Plaintiff on January 29, 2025 in the Fairfax County Juvenile and Domestic District Court. Plaintiff was not present at the hearing for this protective order because

4

he was detained in jail at the time for the charges based on Kaleem's and Chadha's false accusations. Plaintiff appealed that two-year protective order.

e.      The statements were also made for the purpose of driving a wedge between Plaintiff and his family members and pry away the emotional and financial support of said family members from Plaintiff.

23.    Shortly after Kaleem and Chadha made said false statements to police, Plaintiff was arrested on a felony criminal charge for larceny, as well as misdemeanor breaking and entering, and two misdemeanor charges for violation of a protective order.

24.    As a direct and proximate result of the false accusations and his arrest, Plaintiff spent two (2) days in jail at the Fairfax County Adult Detention Center before receiving a bond.

25.    As a direct and proximate result of the false accusations and his arrest, Plaintiff lost unsupervised visitation with his children based on the temporary custody and visitation order entered by the Fairfax County Circuit Court at Kaleem's request and has also been prevented from communicating with his children.

26.    As a direct and proximate result of the false accusations and his arrest, Plaintiff was placed under threat of criminal prosecution for months.

27.    As a direct and proximate result of the false accusation and his arrest, Plaintiff was forced to defend against these additional allegations in his protective order appeal from the Fairfax County Juvenile and Domestic Relations District Court to the Fairfax County Circuit Court.

28.    As a direct and proximate result of the false accusations and arrest, Plaintiff incurred $163,000.00 in attorney's fees defending the criminal charges and litigating the additional allegations in the protective order appeal.

5

29.     Defendants continued to support and press for the prosecution of Plaintiff on each of the charges against him.

30.     On January 24, 2025, the two charges for violation of the protective order were dismissed since the protective order Kaleem accused Plaintiff of violating had already expired.

31.     On February 21, 2025, the prosecutor dismissed, *nolle prossequi,* the charge against Plaintiff for felony larceny in the Fairfax County Juvenile and Domestic Relations District Court

32.     On June 23, 2025, the misdemeanor unlawful entry charge against Plaintiff was also dismissed by the Fairfax County Circuit Court.

33.     On July 9, 2025, the Fairfax County Circuit Cout dissolved the protective order against Plaintiff that had been entered in his absence by the Fairfax County Juvenile and Domestic Relations District Court.

34.     After what had become a six-month torturous ordeal, all charges and civil protective orders against Plaintiff based on Defendants' false accusations in January 2025 had been either dropped or dismissed due to a complete lack of evidence.

## COUNT I – DEFAMATION

### (Against Both Defendants)

35.     Plaintiff repeats and re-alleges each and every paragraph as if fully set forth herein.

36.     As stated above, Defendants made false statements about Plaintiff in an effort to impugn his character, accuse him of crimes, indicate he has mental illness issues that he does not have, have him arrested, have him jailed, and to use such accusations and proceedings against him as a basis to remove him from the lives of his children.

37.     As stated above, Defendants made false statements accusing Plaintiff of committing crimes of moral turpitude.

38.     Defendants knew the statements were false when they made them, and directly and proximately resulted in the harm detailed above.

39.     Said statements were maliciously stated by Defendants.

40.     Therefore, the statements are defamatory and defamatory *per se* to Plaintiff, and as such directly and proximately caused Plaintiff great anxiety of mind and emotional distress, damage to Plaintiff's reputation and future employment prospects, the loss of Plaintiff's liberty, loss of Plaintiff's visitation with his children, months of criminal prosecution and civil protective order litigation, and caused significant costs in attorney's fees.

WHEREFORE, Plaintiff seeks judgment against Defendants, jointly and severally, for defamation and defamation *per se* in the amount of $1,000,000.00, as well as punitive damages in the amount of $350,000.00, interest and costs of suit, and such other and further relief as the Court deems meet and just.

## COUNT II – MALICIOUS PROSECUTION

### (Against Both Defendants)

41.     Plaintiff repeats and re-alleges each and every foregoing paragraphs as if fully set forth herein.

42.     The accusations made by Defendants against Plaintiff to police on January 10, 2025 for the improper purpose of gaining an advantage in Kaleem's custody and visitation dispute with the Plaintiff, and otherwise to harass, intimidate, annoy and threaten the Plaintiff and deprive him of visitation with his children, and to cost him money he could not afford to pay.

43.     The pursuit of said prosecution and accusations were malicious, as such.

44.     The accusations and pursuit of said prosecution by Defendants directly and proximately caused Plaintiff great anxiety of mind and emotional distress, damage to Plaintiff's

reputation and future employment prospects, the loss of Plaintiff's liberty, loss of Plaintiff's visitation with his children, months of criminal prosecution, and civil protective order litigation, and caused significant costs in attorney's fees.

WHEREFORE, Plaintiff seeks judgment against Defendants, jointly and severally, for Malicious Prosecution in the amount of $1,000,000.00, as well as punitive damages in the amount of $350,000.00, interest and costs of suit, and such other and further relief as the Court deems meet and just.

## COUNT III – ABUSE OF CIVIL PROCESS

### (Against Kaleem)

45.    Plaintiff repeats and re-alleges each and every foregoing paragraphs as if fully set forth herein.

46.    Kaleem swore out a protective order against Plaintiff without cause or justification after her accusations from January 10 and January 11, 2025, and the arrest of Plaintiff described above. The statements Kaleem made to support said protective order were the same false statements that Kaleem made to police on January 10, 2025.

47.    Kaleem swore out said two-year protective order in January 2025 against Plaintiff for the improper purpose of gaining an advantage in her custody and visitation dispute with the Plaintiff, and otherwise to harass, intimidate, annoy and threaten the Plaintiff and deprive him of visitation with his children, and to cost him money he could not afford to pay.

48.    The actions of Kaleem constitute the tort of Abuse of Civil Process.

49.    The actions of Kaleem were malicious in that they intended harm to the Plaintiff, were wholly without cause or justification and were improper under the facts and circumstances of the matter.

50. The accusations and pursuit of said protective order by Kaleem directly and proximately caused Plaintiff great anxiety of mind and emotional distress, damage to Plaintiff's reputation and future employment prospects, the loss of Plaintiff's liberty, loss of Plaintiff's visitation with his children, months of civil protective order litigation, and caused significant costs in attorney's fees.

WHEREFORE, Plaintiff seeks judgment against Kaleem for Abuse of Civil Process in the amount of $1,000,000.00, as well as punitive damages in the amount of $350,000.00, interest and costs of suit, and such other and further relief as the Court deems meet and just.

**TRIAL BY JURY IS DEMANDED ON ALL ISSUES.**

Respectfully Submitted,

Anjum Rokadia
By Counsel

/s/

Daniel A. Harvill, Esq. (VSB#47756)
Counsel for Plaintiff
DANIEL A. HARVILL, PLLC
9403 Grant Avenue, Suite 202
Manassas, VA 20110
Phone: 703-485-3111
Fax: 571-287-6795
Cell: 703-507-6969
E-mail: danielaharvillpllc@gmail.com

9