**IN THE UNITED STATE DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| **ANJUM ROKADIA** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 1:25-cv-01428-RDA-IDD** |
| ) | |
| **UZMA KALEEM, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

### MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS OF DEFENDANT, SALMA CHADHA

**COMES NOW**, Plaintiff, Anjum Rokadia (hereinafter, Plaintiff), by counsel, and respectfully submits his Memorandum in Opposition to the Motion to Dismiss by Defendant, Salma Chadha (hereinafter, Chadha), and furthermore states as follows:

### FACTUAL BACKGROUND AND PROCEDURAL POSTURE

Against Chadha, Plaintiff makes Virginia state law claims for Defamation (Count I of the Plaintiff's Complaint) and Malicious Prosecution (Count II of Plaintiff's Complaint). Count III of Plaintiff's Complaint apply only to Defendant, Uzma Kaleem.

The facts underlying Plaintiff's claims are as follows:

Plaintiff is the former spouse of Kaleem (Complaint, ¶4). Kaleem and Plaintiff had a contentious and prolonged divorce in the Fairfax County Circuit Court that came to trial during 2024, and from which a Custody and Visitation Order, as well as a divorce decree were issued. (Complaint, ¶4). As a result of that litigation, Plaintiff received a visitation schedule with his children. (Complaint, ¶5).

1

Defendant Chadha is the sister of Kaleem. When Plaintiff and Kaleem were married, they lived in a residence owned by Chadha in Springfield, VA. Chadha was their landlord. (Complaint, ¶6). Chadha, Kaleem and Plaintiff had a written lease for the rental of said residence by Kaleem and Plaintiff from Chadha. (Complaint, ¶7). During and after the divorce of Plaintiff and Kaleem, Chadha and Kaleem often spoke about the situation of Kaleem and Plaintiff. (Complaint, ¶8).

Kaleem was disaffected by the result of the custody and visitation schedule received by the Plaintiff and motivated by a desire to retaliate against Plaintiff by getting him in trouble with law enforcement (Complaint, ¶9). Chadha supported her sister, Kaleem, in this disaffection and retaliation, and supported Kaleem's actions thereafter. (Complaint, ¶10) Before and after the custody and visitation schedule was established, Kaleem engaged in a campaign of defamation and false accusations against Plaintiff, both to various private individuals as well as to local police. (Complaint, ¶11). Chadha likewise engaged in a campaign alongside her sister to bolster and amplify the various false accusations of wrongdoing by Plaintiff both to private individuals and to the police. (Complaint, ¶12).

As a result of these false accusations, Plaintiff was placed under a protective order and was also charged with significant crimes. (Complaint, ¶13). On January 11, 2025, Kaleem stated to Farida Rokadia, Plaintiff's family member, that Plaintiff "broke into my home while I was out of town and took items from the house." This is an accusation of a crime of moral turpitude. On January 10,2025 Kaleem made the same statement to a police officer. On the January 11, 2025, Kaleem stated to Farida Rokadia that Plaintiff had made an "attempt to communicate" with her in a manner that would violate said protective order. This is an accusation of a crime. On January 11, 2025, Kaleem made the same statement to a 911 operator and to Plaintiff's daughter. On January 10, 2025, Kaleem made the same statement to a police officer. On January 10, 2025, Chadha

supported her sister during the interview with police, confirming Kaleem's false accusation by saying, "I don't know why he's doing stuff like this. He's crazy." On January 10, 2025, Chadha also stated to Plaintiff's daughter that Plaintiff was mentally ill, calling him "crazy." (Complaint, ¶14).

The statements made by Kaleem to police on January 10, 2025, were false when made. (Complaint, ¶15). Indeed, the protective order that Kaleem accused Plaintiff of violating had already expired. (Complaint, ¶16). Kaleem knew the statements to police were false when she made them. (Complaint, ¶17). The statements by Chadha confirming Kaleem's false accusations to police on January 10, 2025, were false when made. (Complaint, ¶18). Chadha knew the statements were false when she made them. (Complaint, ¶19). The statements made by Kaleem to Farida Rokadia, Plaintiff's daughter and the 911 Operator on January 11, 2025, were false when made. (Complaint, ¶21). Kaleem knew that said statements were false when she made them. (Complaint, ¶22).

Disaffected by the custody and visitation order, and motivated by a desire to retaliate against Plaintiff for ending the parties' marriage, Kaleem and Chadha sought to obtain the arrest and detention of Plaintiff, and to place pending charges against him. They intended for Kaleem to use the arrest and charges against Plaintiff as a basis to change custody and visitation of the children. They further intended to use the arrest and detention of Plaintiff as a basis to withhold the children from Plaintiff. Indeed, shortly after January 11, 2025, Kaleem successfully sought an emergency modification of custody and visitation on a temporary basis in the Fairfax County Circuit Court. She is also pursuing a permanent modification in that court. The basis of her claim for a change in custody was the arrest and detention and pending charges against Plaintiff based on her false accusations. In addition, Kaleem also used said false accusations to obtain a new two-

year protective order against Plaintiff on January 29, 2025 in the Fairfax County Juvenile and Domestic District Court. Plaintiff was not present at the hearing for this protective order because he was detained in jail at the time for the charges based on Kaleem's and Chadha's false accusations. Plaintiff appealed that two-year protective order. The statements were also made for the purpose of driving a wedge between Plaintiff and his family members and pry away the emotional and financial support of said family members from Plaintiff. (Complaint, ¶22). Shortly after Kaleem and Chadha made said false statements to police, Plaintiff was arrested on a felony criminal charge for larceny, as well as misdemeanor breaking and entering, and two misdemeanor charges for violation of a protective order. (Complaint, ¶23).

As a direct and proximate result of the false accusations and his arrest, Plaintiff spent two (2) days in jail at the Fairfax County Adult Detention Center before receiving a bond. (Complaint, ¶24). As a direct and proximate result of the false accusations and his arrest, Plaintiff lost unsupervised visitation with his children based on the temporary custody and visitation order entered by the Fairfax County Circuit Court at Kaleem's request and has also been prevented from communicating with his children. (Complaint, ¶25). As a direct and proximate result of the false accusations and his arrest, Plaintiff was placed under threat of criminal prosecution for months. (Complaint, ¶26). As a direct and proximate result of the false accusation and his arrest, Plaintiff was forced to defend against these additional allegations in his protective order appeal from the Fairfax County Juvenile and Domestic Relations District Court to the Fairfax County Circuit Court. (Complaint, ¶27). As a direct and proximate result of the false accusations and arrest, Plaintiff incurred $163,000.00 in attorney's fees defending the criminal charges and litigating the additional allegations in the protective order appeal. (Complaint, ¶28). Defendants Chada and

4

Kaleem continued to support and press for the prosecution of Plaintiff on each of the charges against him. (Complaint, ¶29).

On January 24, 2025, the two charges for violation of the protective order were dismissed since the protective order Kaleem accused Plaintiff of violating had already expired. (Complaint, ¶30). On February 21, 2025, the prosecutor dismissed, *nolle prossequi,* the charge against Plaintiff for felony larceny in the Fairfax County Juvenile and Domestic Relations District Court. (Complaint, ¶31). On June 23, 2025, the misdemeanor unlawful entry charge against Plaintiff was also dismissed by the Fairfax County Circuit Court. (Complaint, ¶32). On July 9, 2025, the Fairfax County Circuit Cout dissolved the protective order against Plaintiff that had been entered in his absence by the Fairfax County Juvenile and Domestic Relations District Court. (Complaint, ¶33). After what had become a six-month torturous and financially disastrous ordeal, all charges and civil protective orders against Plaintiff based on Defendants' false accusations in January 2025 had been either dropped or dismissed due to a complete lack of evidence. (Complaint, ¶34).

Plaintiff filed his Complaint on August 29, 2025. Plaintiff's Complaint was timely served on both Defendants on November 29, 2025. This Motion to Dismiss by Chadha was timely filed on December 17, 2025.

### STANDARD OF REVIEW

A Rule 12 (b) (6) motion to dismiss tests the legal sufficiency of the Complaint, and should be denied unless "it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994). In passing on a motion to dismiss, "the material allegations of the complaint are taken as admitted." Additionally the complaint is to be liberally construed in favor of Plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, a Plaintiff must allege more than mere conclusory

allegations and must allege facts that plausibly support his claim. <u>See</u>, <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009).

**ARGUMENT**

Chadha first argues that Plaintiff's defamation claim under Count I of Plaintiff's Complaint must be dismissed because he has not sufficiently alleged Chadha's exact words beyond mere opinion. Next Chadha argues that Plaintiff' malicious prosecution claim under Count II of the Complaint fails because Plaintiff has only alleged that Chadha stated her opinion that Plaintiff was "crazy." Thirdly, Chadha argues that punitive damages are not available because the requisite malice for punitive damages is not shown by Chadha stating her opinion that Plaintiff is "crazy." All three of Chadha's arguments fail.

Chadha cherry picks one or two quotes from Plaintiff's Complaint to try to convince this Court that Plaintiff alleges all Chadha said was that Plaintiff was "crazy." This is a totally inaccurate rendition of the facts in the Complaint. It is an attempt to deprive the allegations in the Complaint of their context and the full weight of Chadha's quoted statements in that context.

As alleged in the Complaint, and as will be argued in more detail, below, Chadha *confirmed* in real time, in the moment, the false accusations against Plaintiff of criminal activity by Kaleem to both the police and the Plaintiff's daughter. *Then* she called the Plaintiff crazy. Furthermore, placing Chadha's statements in the context of Chadha's motivations and the full circumstances shows the malicious and defamatory statements alleged defeat each of Chadha's arguments in turn.

**A.     Plaintiff's Defamation Claim Under Count I of Plaintiff's Complaint Is Sufficiently Alleged.**

To state a claim for defamation under Virginia law, a plaintiff must allege facts in support of three elements: "(1) publication of (2) an actionable statement with (3) the requisite intent." Schaecher v. Bouffault, 290 Va. 83, 91 (2015) (quoting, Tharpe v. Saunders, 285 Va. 476, 480 (2013)). To be "actionable," a statement must be "both false and defamatory." Id. (quoting Tharpe, 285 Va. at 481). Chadha does not argue that Plaintiff has not fulfilled these elements.

Instead, Chadha argues for dismissal of the Count I of Plaintiff's Complaint by relying almost entirely on the Virginia precedent of Fuste v. Riverside Healthcare Ass'n, 265 Va. 127 (2003). In that case, the Supreme Court of Virginia established a.) that statements of opinion are not actionable, and b.) that Virginia Courts' defamation pleading standard requires the use of exact words. Fuste at 134. Chadha argues that the only exact words attributed to her are related to statements concerning Plaintiff's mental state, and that those statements are matters of opinion. This argument is unsustainable in light of the facts alleged in the Complaint.

Assuming the Virginia pleading standard applies in this Court and that exact words should be used where possible, Chadha's argument ignores the facts alleged in Plaintiff's Complaint. As stated in paragraph 14 of the Complaint:

> "a. On January 11, 2025, Kaleem stated to Farida Rokadia, Plaintiff's family member, that Plaintiff "broke into my home while I was out of town and took items from the house." This is an accusation of a crime of moral turpitude.
> b. On January 10,2025 Kaleem made the same statement to a police officer.
> c. On the January 11, 2025, Kaleem stated to Farida Rokadia that Plaintiff had made an "attempt to communicate" with her in a manner that would violate said protective order. This is an accusation of a crime.
> d. On January 11, 2025, Kaleem made the same statement to a 911 operator and to Plaintiff's daughter.
> e. On January 10, 2025, Kaleem made the same statement to a police officer.
> f. On January 10, 2025, Chadha supported her sister during the interview with police, confirming Kaleem's false accusation by saying, "I don't know why he's doing stuff like this. He's crazy."
> g. On January 10, 2025, Chadha also stated to Plaintiff's daughter that Plaintiff was mentally ill, calling him "crazy.""

Looking at the entirety of the context of the facts alleged in the pleading, it is apparent that Kaleem said certain statements to police on January 10 about alleged bad behaviors by Plaintiff. This included breaking into Kaleem's home, theft, and attempting to communicate in violation of a protective order. Chadha was present during the interview and confirmed Kaleem's accusations of false facts. [Complaint §14(f)]. She included within her confirmation an accusation that Plaintiff's was mentally unwell. [Complaint §14(f)]. Plaintiff submits that both were actionable phrases within the context of the conversation.

Calling Plaintiff "crazy" in the context of false accusations of rampant lawlessness certainly would lead the hearer to the conclusion that a person is experiencing a mental break, psychotic episode, etc. Therefore, Plaintiff submits that in this context the statements to the police officer [Complaint §§14(a), 14(c), 14(f)], and also to the Plaintiff's daughter [Complaint §14(g)] the same day, are not mere opinions. They are stated with the intention of creating a belief in Plaintiff's mental illness in the mind of the police officer or in the mind of the daughter, based on false statements of fact. Therefore, this rises above mere opinion as alluded to by the Supreme Court of Virginia in Fuste, supra.

Regardless, the false statement of mental illness is not the crux of the Complaint, nor the basis for the claims of damages caused by the false and defamatory statements. Even if this Court agrees that the statement that Plaintiff was "crazy" is a mere opinion, the Chadha's full statement in paragraph 14(f) is clearly defamatory.

With the words "I don't know why *he's doing* stuff like this…" (emphasis added), Chadha confirms the litany of false facts and accusations just stated by Kaleem. That statement was defamatory and amounted to repeating the same false accusations made by Kaleem.

Therefore, it is clear that Chadha stated more than opinions. As alleged in the Complaint, she confirmed false facts. As alleged, she knew them to be false when she confirmed them. She confirmed them to a police officer with the intent of having Plaintiff charged with a crime and to interfere in his custodial rights, as alleged in the Complaint. Plaintiff was damaged as a result. This fulfils the elements of a defamation claim under Virginia law. See, Schaecher, at 91.

**B.     Plaintiff's Malicious Prosecution Claim under Count II of Plaintiff's Complaint Is Sufficiently Alleged.**

"A plaintiff alleging malicious prosecution must plead and prove by a preponderance of the evidence that the prosecution was (1) malicious, (2) instituted by or with the cooperation of the defendant(s), (3) without probable cause, and (4) terminated in a manner not unfavorable to the plaintiff." Eubank v. Thomas, 300 Va. 201, 208 (2021). "In the context of a malicious prosecution action, malice is defined as any controlling motive other than a good faith desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished." Hudson v. Lanier, 255 Va. 330, 333 (1998).

As before, Chadha fails to argue that any of these elements are specifically unfulfilled. Rather, she argues that all she said was her opinion that Plaintiff was "crazy." Again, Chadha ignores the other factual allegations adjacent to her false statement concerning Plaintiff's mental wellness. As stated *in haec verba* and in detail in paragraph 14 of the Complaint, Chadha confirmed a false litany of criminal wrongdoing stated by Kaleem. That alone is sufficient to defeat Chadha's argument as it relates to the malicious prosecution claim.

But the Complaint contains many more supporting and contextual allegations that must be viewed in the light most favorable to the Plaintiff at this stage of the case. Jenkins, 395 U.S. at 421. Chadha supported her sister, Kaleem, in her disaffection and retaliation after the result of

Plaintiff's divorce from Kaleem, and supported Kaleem's actions thereafter. (Complaint, ¶10) Kaleem engaged in a campaign of defamation and false accusations against Plaintiff, both to various private individuals as well as to local police. (Complaint, ¶11). Chadha likewise engaged in a campaign alongside her sister to bolster and amplify the various false accusations of wrongdoing by Plaintiff both to private individuals and to the police. (Complaint, ¶12). Kaleem and Chadha sought to obtain the arrest and detention of Plaintiff, and to place pending charges against him. (Complaint, ¶22). They used the false statements to gain protective orders against Plaintiff, preventing him from seeing his children. (Complaint, ¶22). They intended for Kaleem to use the arrest and charges against Plaintiff as a basis to change custody and visitation of the children. (Complaint, ¶22). They further intended to use the arrest and detention of Plaintiff as a basis to withhold the children from Plaintiff. (Complaint, ¶22). The statements were also made for the purpose of driving a wedge between Plaintiff and his family members and to  pry away the emotional and financial support of said family members from Plaintiff. (Complaint, ¶22). He was thereafter prosecuted for a felony and three misdemeanor charges as a result of the false statements. (Complaint, ¶27). All of these charges were dismissed against Plaintiff, several without a hearing, due to a lack of evidence. All protective orders against Plaintiff were dissolved due to a lack of evidence. (Complaint, ¶34).

It is clear from these facts that Plaintiff has made allegations sufficient to show that Chadha was a full participant in the storm of false accusations levelled against him. She facilitated them. She supported them. Chadha acted in concert with her sister to achieve the results her sister wanted. Then, perhaps most importantly, she specifically and factually *confirmed* the false accusations. [Complaint §§14(a), 14(c), 14(f)].

### C.    Plaintiff Has Alleged Facts Sufficient to Support Punitive Damages.

In Virginia, a party is entitled to recover punitive damages when he pleads and proves that the defendant has committed a willful tort, beyond the mere breach of a duty. See, Kamlar Corp. v. Haley, 224 Va. 699, 707 (1983). Punitive damages are then only warranted for conduct which is so willful or wanton as to evince a conscious disregard for the rights of others. See, Owens-Corning Fiberglass Corp. v. Watson, 243 Va. 128, 144 (1992).

Chadha finally disingenuously argues that all she did was state her opinion that Plaintiff was "crazy," and this is insufficient to establish the malice and egregious conduct necessary for a punitive damages award. Again, Chadha ignores the other factual allegations adjacent to her false statement concerning Plaintiff's mental wellness. As before, Chadha seeks to have this Court ignore the other allegations in the Complaint showing she acted in concert with her sister and specifically confirmed the false accusations of criminal activity made by her sister, as detailed above.

Plaintiff submits that the gauntlet of legal prosecutions and civil proceedings that were inflicted on Plaintiff through Chadha's confirmatory statements to police, and the motivations and purposes detailed in the Complaint, are egregious, wanton and willful. They are sufficient to establish a claim for punitive damages under the applicable standard.

### CONCLUSION

WHEREFORE, in consideration of the foregoing, Plaintiff respectfully requests that the Motion to Dismiss of Defendant, Salma Chadha, be denied. In the alternative, Plaintiff requests leave to amend his Complaint.

Respectfully Submitted,

Anjum Rokadia
By Counsel

11

/s/           

Daniel A. Harvill, Esq. (VSB#47756)
Counsel for Plaintiff
DANIEL A. HARVILL, PLLC
9403 Grant Avenue, Suite 202
Manassas, VA 20110
Phone: 703-485-3111
Fax: 571-287-6795
Cell: 703-507-6969
E-mail: danielaharvillpllc@gmail.com

## Certificate of Service/Mailing

I hereby certify that on January 7, 2026, I will electronically file the foregoing using the

Court's CM/ECF system, which will send a notification of such filing (NEF) to all counsel of

record for all parties who have appeared in this action, who are

Mikhael D. Charnoff, VSB No. 43929
Zachary H. Boron, VSB No. 95352
CHARNOFF SIMPSON PLLC
111 Church Street NW, Suite 202A
Vienna, Virginia 22180
(703) 291-6650 Phone
mike@charnoffsimpson.com
zach@charnoffsimpson.co

/s/           

Daniel A. Harvill, Esq. (VSB#47756)
Counsel for Plaintiff
DANIEL A. HARVILL, PLLC
9403 Grant Avenue, Suite 202
Manassas, VA 20110
Phone: 703-485-3111
Fax: 571-287-6795
Cell: 703-507-6969
E-mail: danielaharvillpllc@gmail.com