**IN THE UNITED STATE DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | | |
|---|---|---|
| **ANJUM ROKADIA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:25-cv-01428-RDA-IDD** |
| | ) | |
| **UZMA KALEEM, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS OF DEFENDANT,**
**UZMA KALEEM**

**COMES NOW**, Plaintiff, Anjum Rokadia (hereinafter, Plaintiff), by counsel, and respectfully submits his Memorandum in Opposition to the Motion to Dismiss by Defendant, Usma Kaleem (hereinafter, Kaleem), and furthermore states as follows:

**FACTUAL BACKGROUND AND PROCEDURAL POSTURE**

Against Kaleem, Plaintiff makes Virginia state law claims for Defamation (Count I of the Plaintiff's Complaint), Malicious Prosecution (Count II of Plaintiff's Complaint) and Abuse of Civil Process (Count III of Plaintiff's Complaint).

The facts underlying Plaintiff's claims are as follows:

Plaintiff is the former spouse of Kaleem (Complaint, ¶4). Kaleem and Plaintiff had a contentious and prolonged divorce in the Fairfax County Circuit Court that came to trial during 2024, and from which a Custody and Visitation Order, as well as a divorce decree were issued. (Complaint, ¶4). As a result of that litigation, Plaintiff received a visitation schedule with his children. (Complaint, ¶5).

Defendant Chadha is the sister of Kaleem. When Plaintiff and Kaleem were married, they lived in a residence owned by Chadha in Springfield, VA. Chadha was their landlord. (Complaint, ¶6). Chadha, Kaleem and Plaintiff had a written lease for the rental of said residence by Kaleem and Plaintiff from Chadha. (Complaint, ¶7). During and after the divorce of Plaintiff and Kaleem, Chadha and Kaleem often spoke about the situation of Kaleem and Plaintiff. (Complaint, ¶8).

Kaleem was disaffected by the result of the custody and visitation schedule received by the Plaintiff and motivated by a desire to retaliate against Plaintiff by getting him in trouble with law enforcement (Complaint, ¶9). Chadha supported her sister, Kaleem, in this disaffection and retaliation, and supported Kaleem's actions thereafter. (Complaint, ¶10) Before and after the custody and visitation schedule was established, Kaleem engaged in a campaign of defamation and false accusations against Plaintiff, both to various private individuals as well as to local police. (Complaint, ¶11). Chadha likewise engaged in a campaign alongside her sister to bolster and amplify the various false accusations of wrongdoing by Plaintiff both to private individuals and to the police. (Complaint, ¶12).

As a result of these false accusations, Plaintiff was placed under a protective order and was also charged with significant crimes. (Complaint, ¶13). On January 11, 2025, Kaleem stated to Farida Rokadia, Plaintiff's family member, that Plaintiff "broke into my home while I was out of town and took items from the house." This is an accusation of a crime of moral turpitude. On January 10, 2025 Kaleem made the same statement to a police officer. On the January 11, 2025, Kaleem stated to Farida Rokadia that Plaintiff had made an "attempt to communicate" with her in a manner that would violate said protective order. This is an accusation of a crime. On January 11, 2025, Kaleem made the same statement to a 911 operator and to Plaintiff's daughter. On January 10, 2025, Kaleem made the same statement to a police officer. On January 10, 2025, Chadha

supported her sister during the interview with police, confirming Kaleem's false accusation by saying, "I don't know why he's doing stuff like this. He's crazy." On January 10, 2025, Chadha also stated to Plaintiff's daughter that Plaintiff was mentally ill, calling him "crazy." (Complaint, ¶14).

The statements made by Kaleem to police on January 10, 2025, were false when made. (Complaint, ¶15). Indeed, the protective order that Kaleem accused Plaintiff of violating had already expired. (Complaint, ¶16). Kaleem knew the statements to police were false when she made them. (Complaint, ¶17). The statements by Chadha confirming Kaleem's false accusations to police on January 10, 2025, were false when made. (Complaint, ¶18). Chadha knew the statements were false when she made them. (Complaint, ¶19). The statements made by Kaleem to Farida Rokadia, Plaintiff's daughter and the 911 Operator on January 11, 2025, were false when made. (Complaint, ¶21). Kaleem knew that said statements were false when she made them. (Complaint, ¶22).

Disaffected by the custody and visitation order, and motivated by a desire to retaliate against Plaintiff for ending the parties' marriage, Kaleem and Chadha sought to obtain the arrest and detention of Plaintiff, and to place pending charges against him. They intended for Kaleem to use the arrest and charges against Plaintiff as a basis to change custody and visitation of the children. They further intended to use the arrest and detention of Plaintiff as a basis to withhold the children from Plaintiff. Indeed, shortly after January 11, 2025, Kaleem successfully sought an emergency modification of custody and visitation on a temporary basis in the Fairfax County Circuit Court. She is also pursuing a permanent modification in that court. The basis of her claim for a change in custody was the arrest and detention and pending charges against Plaintiff based on her false accusations. In addition, Kaleem also used said false accusations to obtain a new two-

3

year protective order against Plaintiff on January 29, 2025 in the Fairfax County Juvenile and Domestic District Court. Plaintiff was not present at the hearing for this protective order because he was detained in jail at the time for the charges based on Kaleem's and Chadha's false accusations. Plaintiff appealed that two-year protective order. The statements were also made for the purpose of driving a wedge between Plaintiff and his family members and pry away the emotional and financial support of said family members from Plaintiff. (Complaint, ¶22). Shortly after Kaleem and Chadha made said false statements to police, Plaintiff was arrested on a felony criminal charge for larceny, as well as misdemeanor breaking and entering, and two misdemeanor charges for violation of a protective order. (Complaint, ¶23).

As a direct and proximate result of the false accusations and his arrest, Plaintiff spent two (2) days in jail at the Fairfax County Adult Detention Center before receiving a bond. (Complaint, ¶24). As a direct and proximate result of the false accusations and his arrest, Plaintiff lost unsupervised visitation with his children based on the temporary custody and visitation order entered by the Fairfax County Circuit Court at Kaleem's request and has also been prevented from communicating with his children. (Complaint, ¶25). As a direct and proximate result of the false accusations and his arrest, Plaintiff was placed under threat of criminal prosecution for months. (Complaint, ¶26). As a direct and proximate result of the false accusation and his arrest, Plaintiff was forced to defend against these additional allegations in his protective order appeal from the Fairfax County Juvenile and Domestic Relations District Court to the Fairfax County Circuit Court. (Complaint, ¶27). As a direct and proximate result of the false accusations and arrest, Plaintiff incurred $163,000.00 in attorney's fees defending the criminal charges and litigating the additional allegations in the protective order appeal. (Complaint, ¶28). Defendants Chada and

Kaleem continued to support and press for the prosecution of Plaintiff on each of the charges against him. (Complaint, ¶29).

On January 24, 2025, the two charges for violation of the protective order were dismissed since the protective order Kaleem accused Plaintiff of violating had already expired. (Complaint, ¶30). On February 21, 2025, the prosecutor dismissed, *nolle prossequi,* the charge against Plaintiff for felony larceny in the Fairfax County Juvenile and Domestic Relations District Court. (Complaint, ¶31). On June 23, 2025, the misdemeanor unlawful entry charge against Plaintiff was also dismissed by the Fairfax County Circuit Court. (Complaint, ¶32). On July 9, 2025, the Fairfax County Circuit Court dissolved the protective order against Plaintiff that had been entered in his absence by the Fairfax County Juvenile and Domestic Relations District Court. (Complaint, ¶33). After what had become a six-month torturous and financially disastrous ordeal, all charges and civil protective orders against Plaintiff based on Defendants' false accusations in January 2025 had been either dropped or dismissed due to a complete lack of evidence. (Complaint, ¶34).

Plaintiff filed his Complaint on August 29, 2025. Plaintiff's Complaint was timely served on both Defendants on November 29, 2025. This Motion to Dismiss by Kaleem was timely filed on December 17, 2025.

**STANDARD OF REVIEW**

A Rule 12 (b) (6) motion to dismiss tests the legal sufficiency of the Complaint, and should be denied unless "it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994). In passing on a motion to dismiss, "the material allegations of the complaint are taken as admitted." Additionally the complaint is to be liberally construed in favor of Plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, a Plaintiff must allege more than mere conclusory

allegations and must allege facts that plausibly support his claim. See, Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

**ARGUMENT**

Kaleem first argues that Plaintiff's defamation claim under Count I of Plaintiff's Complaint must be dismissed because Kaleem's false statements were not sufficiently defamatory. She then argues dismissal of the malicious prosecution claim under Count II of Plaintiff's Complaint because Plaintiff failed to allege that Kaleem lacked probable cause. Thirdly, Kaleem argues that pursuit of a protective order is not an abuse of civil process. Finally, Kaleem argues that the allegations against Kaleem in the Complaint do not show behavior that is sufficiently willful or egregious to allow for punitive damages.

Given the allegations in Plaintiff's Complaint, Kaleem's arguments are specious on their face and fail, in turn.

**A.      Plaintiff's Defamation Claim Under Count I of Plaintiff's Complaint Is Sufficiently Alleged.**

To state a claim for defamation under Virginia law, a plaintiff must allege facts in support of three elements: "(1) publication of (2) an actionable statement with (3) the requisite intent." Schaecher v. Bouffault, 290 Va. 83, 91 (2015) (quoting, Tharpe v. Saunders, 285 Va. 476, 480 (2013)). To be "actionable," a statement must be "both false and defamatory." Id. (quoting Tharpe, 285 Va. at 481).

Kaleem argues that Plaintiff has not fulfilled the second element for defamation. She posits that her statements contained in the Complaint are not defamatory because they lack the requisite defamatory "sting." See, Air Wis. Airlines Corp. v. Hoeper, 571 U.S. 237, 255 (2014) (focusing on "the substance, the gist, the sting" of an allegedly defamatory statement); Curtis

6

<u>Pub. Co. v. Butts</u>, 388 U.S. 130, 138 (1967) (referring to the defamatory implication as the "sting of the libel"). This is almost a ludicrous argument given the statements at issue and the consequences they wrought upon Plaintiff, as alleged in the Complaint.

As stated in paragraph 14 of the Complaint:

"a.   On January 11, 2025, Kaleem stated to Farida Rokadia, Plaintiff's family member, that Plaintiff "broke into my home while I was out of town and took items from the house." This is an accusation of a crime of moral turpitude.

b.   On January 10,2025 Kaleem made the same statement to a police officer.

c.   On the January 11, 2025, Kaleem stated to Farida Rokadia that Plaintiff had made an "attempt to communicate" with her in a manner that would violate said protective order. This is an accusation of a crime.

d.   On January 11, 2025, Kaleem made the same statement to a 911 operator and to Plaintiff's daughter.

e.   On January 10, 2025, Kaleem made the same statement to a police officer.

f.   On January 10, 2025, Chadha supported her sister during the interview with police, confirming Kaleem's false accusation by saying, "I don't know why he's doing stuff like this. He's crazy."

g.   On January 10, 2025, Chadha also stated to Plaintiff's daughter that Plaintiff was mentally ill, calling him "crazy.""

Looking at the entirety of the context of the facts alleged in the pleading, it is apparent that Kaleem said certain statements to police on January 10, 2025. She stated to the police a.) that Plaintiff attempted to communicate with her in violation of a protective order, b.) that Plaintiff broke into her home, and c.) that Plaintiff stole items from her home. In other words, she accused him of breaking and entering and/or burglary, larceny and violating a protective order. She repeated this statement to a 911 Operator, and Plaintiff's family members.

On their face, these statements are defamatory, and Kaleem's argument fails. They are accusations of two, or perhaps three, crimes of moral turpitude pursuant to a theft, as well as a crime involving violation of a protective order.

Furthermore, Kaleem's statements certainly had defamatory "sting" when Plaintiff was charged with three misdemeanors and a felony as a direct and proximate result of them.

(Complaint, ¶23). They had additional "sting" when Plaintiff was locked in jail for two days as a result of them. (Complaint, ¶24). They had even more sting when they caused Plaintiff to incur $163,000.00 in legal fees (Complaint, ¶28). They had perhaps the most sting when they formed the basis for taking away Plaintiff's time with his children via a custody modification and a temporary and permanent protective order (Complaint, ¶¶22, 23 and 25).

Therefore, the Motion to Dismiss Count I of the Complaint should be denied.

**B.     Plaintiff's Malicious Prosecution Claim under Count II of Plaintiff's Complaint Is Sufficiently Alleged.**

"A plaintiff alleging malicious prosecution must plead and prove by a preponderance of the evidence that the prosecution was (1) malicious, (2) instituted by or with the cooperation of the defendant(s), (3) without probable cause, and (4) terminated in a manner not unfavorable to the plaintiff." Eubank v. Thomas, 300 Va. 201, 208 (2021). Kaleem's argument addresses factor three of a malicious prosecution claim, concerning probable cause. She argues that Plaintiff failed to allege facts sufficient to establish a lack of probable cause.

Plaintiff's Complaint alleges that Kaleem accused him of two, or perhaps three, crimes involving theft, as well as two crimes of violating a protective order that was no longer even in effect. (Complaint ¶¶ 14, 16). They resulted in one felony and three misdemeanor charges against Plaintiff. (Complaint ¶¶ 13, 23). Plaintiff alleges Kaleem continued to press those charges until they were all ultimately dismissed. (Complaint ¶¶ 29, 34). Plaintiff alleges that Kaleem's statements that formed the basis of the charges were false. (Complaint ¶15). Plaintiff alleges that Kaleem knew said statements were false when she made them. (Complaint ¶16). Plaintiff submits that a person cannot think they have probable cause to believe a crime was

committed when they are the ones who made the knowingly false statements to substantiate the crime.

Therefore, Kaleem's argument concerning Count II of Plaintiff's Complaint also fails, and the Motion to Dismiss same should be denied.

**C.      Plaintiff's Abuse of Process Claim under Count III of Plaintiff's Complaint Is Sufficiently Alleged.**

Under Virginia law, abuse of process is defined as the wrongful use of process after it has been issued. Triangle Auto Auction, Inc. v. Cash, 380 S.E.2d 649, 650 (Va. 1989). The tort consists of two elements: "(1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceedings." Id. (citing, Donohoe Construction v. Mount Vernon Assoc., 369 S.E.2d 857, 862 (Va. 1988)); Mullins v. Sanders, 54 S.E.2d 116, 121 (Va. 1949). "[T]o sustain an action for abuse of process, proof of malice is not necessary as to the issuance of the process, but it is necessary to allege and prove the process, after being sued out, was maliciously misused or abused." Mullins, 54 S.E.2d at 121 (citations and internal quotes omitted). Examples of abuse of process include '"a whip to force the payment of an alleged indebtedness," Mullins, 54 S.E.2d at 122 (citation omitted), or as a means of extortion. Glidewell v. Murray-Lacy, 98 S.E. 665, 669 (Va. 1919).

Kaleem argues that Plaintiff's claim for abuse of civil process under Count III of the Complaint fails because there were insufficient allegations that "the protective order obtained by Kaleem was used for an improper purpose after it was filed." In other words, Kaleem seeks to delimit an Abuse of Civil Process claim only to the utilization of the claim after it was made.

Even assuming, *arguendo*, that this is a correct interpretation of the law and precedent, it is clear that the Complaint alleges facts sufficient to sustain the claim. The Complaint alleges

improper use of the protective order process to turn a preliminary protective order into a permanent protective order. (Complaint ¶ 22). The permanent protective order is a second step in the protective order process after the initiation of the matter. <u>See</u>, Va. Code Ann. §16.1-253.1; <u>see also</u>, Va. Code Ann. §16.1-279.1. She lied and repeated her false statements that initiated the process to thereby advance the process to a permanent protective order. (Complaint ¶ 22). She was only successful since Kaleem timed the matter to be heard when Plaintiff could not appear in Court for the permanent protective order hearing. (Complaint ¶ 22). He could not appear because he had been jailed based on Kaleem's false accusations. (Complaint ¶ 22). In other words, the allegations in the Complaint show utilization of falsely initiated criminal proceedings to gain leverage in the protective order process, and then the use of the second-stage protective order process to gain leverage in a custody and visitation matter. (Complaint ¶ 22).

Plaintiff submits these allegations are sufficient to show an abuse of civil process in Kaleem's alleged scheme of retaliation and harassment. Therefore, Kaleem's Motion to Dismiss should be denied as to Count III of Plaintiff's Complaint.

### D.      Plaintiff Has Alleged Facts Sufficient to Support Punitive Damages.

In Virginia, a party is entitled to recover punitive damages when he pleads and proves that the defendant has committed a willful tort, beyond the mere breach of a duty. <u>See</u>, <u>Kamlar Corp. v. Haley</u>, 224 Va. 699, 707 (1983). Punitive damages are then only warranted for conduct which is so willful or wanton as to evince a conscious disregard for the rights of others. <u>See, Owens-Corning Fiberglass Corp. v. Watson</u>, 243 Va. 128, 144 (1992).

Kaleem disingenuously argues the facts alleged are insufficient to establish the malice and egregious conduct necessary for a punitive damages award. It is important here to look at the facts, circumstances and context alleged in the Complaint. Then it becomes easy to judge the

sufficiency of the allegations taken in the light most favorable to the Plaintiff. <u>Jenkins</u>, 395 U.S. at 421.

As alleged, Kaleem acted with a malicious intent of retaliation after being disaffected with the results of her divorce case as it related to the custody and visitation of Plaintiff's and Kaleem's children. (Complaint, ¶9) Kaleem engaged in a campaign of defamation and false accusations against Plaintiff, both to various private individuals as well as to local police. (Complaint, ¶11). Kaleem and Chadha sought to obtain the arrest and detention of Plaintiff, and to place pending charges against him. (Complaint, ¶22). They used the false statements (Complaint ¶14) to gain a permanent protective order against Plaintiff, preventing him from seeing or communicating with his children. (Complaint, ¶22). They intended for Kaleem to use the arrest and charges against Plaintiff as a basis to change custody and visitation of the children. (Complaint, ¶22). They further intended to use the arrest and detention of Plaintiff as a basis to withhold the children from Plaintiff. (Complaint, ¶22). The statements were also made for the purpose of driving a wedge between Plaintiff and his family members and to pry away the emotional and financial support of said family members from Plaintiff. (Complaint, ¶22). He was thereafter prosecuted for a felony and three misdemeanor charges as a result of the false statements. (Complaint, ¶27). All of these charges were dismissed against Plaintiff, several without a hearing, due to a lack of evidence. All protective orders against Plaintiff were dissolved due to a lack of evidence. (Complaint, ¶34).

Plaintiff submits that the gauntlet of legal prosecutions and civil proceedings that were inflicted on Plaintiff through Kaleem's false statements to police, and the motivations and purposes detailed in the Complaint, are egregious, wanton and willful. They are sufficient to establish a claim for punitive damages under the applicable standard.

**CONCLUSION**

WHEREFORE, in consideration of the foregoing, Plaintiff respectfully requests that the

Motion to Dismiss of Defendant, Usma Kaleem, be denied. In the alternative, Plaintiff requests

leave to amend his Complaint.

Respectfully Submitted,

Anjum Rokadia
By Counsel

/s/

Daniel A. Harvill, Esq. (VSB#47756)
Counsel for Plaintiff
DANIEL A. HARVILL, PLLC
9403 Grant Avenue, Suite 202
Manassas, VA 20110
Phone: 703-485-3111
Fax: 571-287-6795
Cell: 703-507-6969
E-mail: danielaharvillpllc@gmail.com

**Certificate of Service/Mailing**

I hereby certify that on January 7, 2026, I will electronically file the foregoing using the

Court's CM/ECF system, which will send a notification of such filing (NEF) to all counsel of

record for all parties who have appeared in this action, who are

Mikhael D. Charnoff, VSB No. 43929
Zachary H. Boron, VSB No. 95352
CHARNOFF SIMPSON PLLC
111 Church Street NW, Suite 202A
Vienna, Virginia 22180
(703) 291-6650 Phone
mike@charnoffsimpson.com
zach@charnoffsimpson.co

/s/

Daniel A. Harvill, Esq. (VSB#47756)
Counsel for Plaintiff
DANIEL A. HARVILL, PLLC
9403 Grant Avenue, Suite 202
Manassas, VA 20110
Phone: 703-485-3111
Fax: 571-287-6795
Cell: 703-507-6969
E-mail: danielaharvillpllc@gmail.com